**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**JASON A. PERRY,**

**Plaintiff,**                                    **Civil Action No. 5:15cv139
(Judge Stamp)**


**ROBERT WHITEHEAD; DON
ZIELINSKY; CECILIA
JANISZEWSKI,** PrimeCare Medical
Administrator**; Dr. JERRY HAHN;
JANE/JOHN DOE; JAMIE LEE**,

**Defendants.**

**REPORT AND RECOMMENDATION**

## I.   Procedural History

On November 15, 2015, the *pro se* Plaintiff, a state inmate, initiated this case by

filing a civil rights action pursuant to 42 U.S.C. § 1983.  On November 6, 2015, the

Plaintiff was granted leave to proceed *in forma pauperis* and was directed to pay an

initial partial filing fee. ECF No. 6. The Plaintiff paid that fee on November 25, 2015.

ECF No. 10. On July 1, 2016, the Plaintiff was granted leave to amend his complaint

[ECF No. 15], and the Clerk of Court was directed to re-file the Plaintiff's original

complaint as an amended complaint and insert within the same the proposed

amendments attached to his motion. The amended complaint was docketed that same

date. ECF No. 16.  On March 17, 2017, the undersigned determined that summary

dismissal was not appropriate, and an Order to Answer was entered which directed the

Marshal Service to serve the Defendants with the amended complaint. ECF No. 30.

On April 24, 2017, W.Va. Correctional Industries, Eddie Long, Robert Whitehead,

Don Zielinsky, and Greg Gilli filed a Motion to Dismiss for Failure to State a Claim. ECF

No. 41. On April 26, 2017, a Roseboro Notice was issued. ECF No. 42. On April 28, 2017, Defendants Cecilia Janiszewski and Jerry Hahn filed a Motion to Dismiss for Failure to State a Claim. ECF No. 44. A second Roseboro Notice was issued on May 1, 2017. ECF No. 46. On May 4, 2017, the Defendant, Jaimie Lee, filed a Motion to Dismiss for Failure to State a Claim. ECF No. 49. A third Roseboro Notice was issued on May 8, 2017. ECF No. 54. On June 5, 2017, the Plaintiff filed separate responses in opposition to each motion to dismiss. ECF Nos. 61-63. On June 7, 2017, Defendant Jaimie Lee filed a Reply [ECF No. 65] and on June 8, 2017, Defendants Greg Gilli, Eddie Long, W.Va. Correctional Industries, Robert Whitehead and Don Zielinski filed a reply. ECF No. 66. On November 6, 2017, Defendants Greg Gilli, Eddie Long and the W.Va. Correctional Industries filed a Stipulation of Dismissal signed by the Plaintiff. ECF No. 77. On November 13, 2017, the Honorable Frederick P. Stamp, Jr., United States District Judge, entered an Order approving the Stipulation of Dismissal and Defendants Eddie Long, Greg Gilli and the W.Va. Correctional Industries were dismissed with prejudice from the complaint. ECF No. 78. This case is now before the undersigned for a report and recommendation on the pending motions to dismiss.

## II.   Contentions of the Parties

### A.   The Amended Complaint (Complaint")

In his complaint, the Plaintiff raises four claims: (1) unsafe work environment; (2) hostile work environment based on sexual preference; (3) discrimination based upon retaliation; and (4) failure to provide proper medical care. Because the Plaintiff argues a violation of the equal protection clause based on sexual preference with respect to claims two and three, the undersigned has construed both as equal protection claims.

2

With respect to his claim regarding an unsafe work environment, the Plaintiff alleges that on March 19, 2014 [ECF No. 16-3, at 2], while still on 30 days probation, he was asked by Defendant Zielinsky to operate a gold foil stamping machine which he had never operated before and on which he had never received a safety orientation training. ECF No. 16 at 9. The Plaintiff maintains that this press and others are old and outdated, and the safety features are broken and/or bypassed. Id. The Plaintiff indicates that he got four fingers caught in the machine. The Plaintiff contends that his "Constitutional Right to 'Equal Protection' was violated due to the unsafe work environment [he] was subjected to." Id.

With respect to his claim for discrimination due to a hostile work environment based on sexual preference, the Plaintiff argues that his "Constitutional rights to 'Equal Protection' and 'Due Process of Law' were violated under Art. III sections 10 and 14 of the West Virginia Constitution, and the First and Sixth Amendment of the United States Constitution." ECF No. 16 at 13.  The Plaintiff indicates that he is serving a large sentence and in July of 2014, he accepted a key position in the Prison Industries which promoted top pay. The Plaintiff alleges that in September of 2014, Defendant Zielinsky told him that he would give him top pay Level 5 for the job he was doing. At the time, the Plaintiff maintains that he was at pay Level 3. The Plaintiff continues by noting that one morning, he asked Defendant Zielinsky to please cut back on the gay jokes and comments because he is gay. The Plaintiff indicates that he did not want to rock the boat or jeopardize losing his job, but the gay jokes and comments had become unbearable. The Plaintiff contends that in October, he went to pay Level 4, not a 5, as promised. When he approached Defendant Zielinski for an explanation, the Plaintiff

alleges that he blamed Charleston. However, the Plaintiff maintains that other people received raises, and he realized that Defendants Zielinsky's and Whiteside's attitudes had completely changed the instant he told them that he was gay. Despite the fact that when other workers complained about pay issues or safety concerns, they were asked about the problems and asked to stay, the Plaintiff alleges that when he spoke about being unhappy, he only was asked to train someone before he left. The Plaintiff concludes this allegation by alleging that Defendant Zielinsky created a hostile and unbearable work environment for anyone with an alternative lifestyle.  ECF No. 16 at 14.

With respect to his third claim, discrimination based upon retaliation, the Plaintiff alleges that his "constitutional rights to 'Equal Protection,' 'Due Process of Law,' and 'Cruel and unusual Punishment' were violated under ART. III sections 10, 14, and 5 of the West Virginia Constitution, and the First, Sixth, and Eighth Amendments of the United States Constitution." ECF No. 16 at 15. The Plaintiff indicates that this claim is actually a continuation of his second claim, but he separated it to provide some clarity. In support of his third claim, the Plaintiff alleges that after filing "the grievance" and explaining his sexual orientation to stop the jokes and comments, things became tense in his work area. The Plaintiff continues that he received permission from Defendant Zielinsky to do a "canned" letter for some workers asking for a pay raise. The Plaintiff indicates that "[a]ll a person needed to do was to provide personal information into it." Id.  The Plaintiff alleges that on July 10, 2014, Defendant Whitehead "jumped" on him for not asking him first and said he did not like the letter. Then, on July 13, 2014, the Plaintiff contends that he was cleaning out his work area when Defendant Zielinsky walked by and gave him permission to throw away some things he no longer used. He

then went to his housing unit for lunch, and when he returned, he was immediately called into Defendant Whitehead's office. The trash that he had thrown away was in the office, and he was asked who gave him permission to throw it away. The Plaintiff alleges that Defendant Zielinski was present but stood silent when he identified him as the individual who had authorized him to throw away things. The Plaintiff alleges that he was then given the opportunity to either resign or be fired and written up. The Plaintiff contends that these actions were clear retaliation for his complaints on the safety issues, the gay jokes and other discrimination issues.

Finally with respect to his medical care[1], the Plaintiff alleges that after he injured his hand in the press, he was taken to medical and "left bleeding for five hours." Afterword, PrimeCare's staff looked at his hand and x-rays were taken. ECF No. 16 at 9. The Plaintiff further alleges that a few days later, he lost a fingernail. He alleges that he was told that the bone was chipped in his right middle finger. He further alleges that a nurse told him to wait six months to a year to make sure the damage was not cosmetic. He maintains that over the course of time, three fingers healed but one did not. More specifically, he indicates that his right middle finger has no feeling in the end of it, and where he "starts getting feeling on both sides hurts constantly like a throbbing toothache." Id. He claims that Dr. Hahn never treated his hands, and neither he nor Cecilia Janiszewski let him see a specialist for his hand. ECF No. 16 at 17. The Plaintiff contends that "[t]he pain and suffering I have may be long term and may have been prevented if treated early." Id. He also alleges that Wexford took over running the medical department after PrimeCare left. He indicates that PrimeCare took all of the

---

[1] The undersigned notes that much of the information which is contained in this section of the Report and Recommendation is actually set out in the Plaintiff's claim regarding unsafe work environment.

medical records when they left. He claims he was told he would see a doctor but never

did.  He also alleges that he stated that he needed a Certificate Merit or screening and

still never saw a specialist. Finally, with respect to Jaimie Lee, he indicates that she

"runs medical for Wexford and that is who would have gotten my letter and never let

[him] see any one for pain or treatment." Id.

**B.   Motion to Dismiss by Robert Whitehead's and Don Zielinsky** [2]

With respect to his claim regarding an unsafe work environment, these

Defendants assert that the Plaintiff is simply alleging a "run of the mill workplace

negligence claim," and this Court does not have subject matter jurisdiction over such a

claim. ECF No. 41-1 at 22. Moreover, these Defendants allege that even if this Court

could exercise jurisdiction over this thinly veiled negligence claim, the named

Defendants still would be entitled to qualified immunity with regard to this claim.

In addition, these Defendants allege that the Plaintiff's claim of discrimination due

to hostile work environment does not sufficiently plead any actionable claim. More

specifically, these Defendants argue that the Plaintiff does not allege any right or

entitlement to Level 5 pay. In addition, these Defendants maintain that the Plaintiff has

failed to allege some form of disparate treatment between himself and one or more

other inmates who were not in his alleged "protected" class. Id. at 5.

Finally, with respect to his third claim[3], retaliatory discharge, these Defendants

maintain that the Plaintiff has no constitutional right to be employed, let alone be

employed in his position of choice. Therefore, these Defendants argue that the Plaintiff

---

[2] The Motion to Dismiss was also filed on behalf of W.Va. Correctional Industries, Eddie Long and Greg Gilli. However, they were dismissed as Defendants pursuant to the Stipulation of Dismissal.

[3] Because it does not appear that any claim for lack of medical care has been asserted against them, these Defendants argue claim four should be dismissed with respect to them.

has no constitutional right or liberty interest in his job. Moreover, these Defendants argue that the Plaintiff seemingly admits that his conduct violated internal rules, and they contend that there does not appear to be any law governing their actions when deciding what is sufficient misconduct to remove an inmate from a specific employment position.

## C. Plaintiff's Opposition

The Plaintiff first cites the well accepted principle that pleadings drafted by *pro se* litigants are held to a less stringent standard than of those drafted by an attorney, and the Court must liberally construe a pleading filed *pro se*. The Plaintiff than clarifies that although he asserted an "unsafe work environment" claim, he is in fact asserting a "deliberate indifference to a known risk of injury" due to these Defendants failure to properly train him in the operation of the equipment and their disregard to missing safety features. In addition, the Plaintiff argues that these Defendants are not entitled to qualified immunity. Finally, the Plaintiff alleges the Defendants discriminated and retaliated against him due to his homosexuality in violation of the Equal Protection Clause . The Plaintiff then argues that to state a claim for a violation of the Equal Protection Clause, a plaintiff must show that the defendant acted with an intent or purpose to discriminate against him on the basis of his membership in a protected class. Citing Romer v. Evans, 517 U.S. 620, 631-36 (1996), the Plaintiff alleges that "homosexual persons or gays and lesbians" are protected from discrimination by the Equal Protection Clause of the Fourteenth Amendment. ECF No. 61-1 at 4. In the apparent alternative, the Plaintiff argues that where the challenged conduct does not

involve a suspect classification, a plaintiff must show that similarly situated people were intentionally treated differently without a rational basis for the disparate treatment.

**D. <u>Defendants' Reply</u>**

Defendants Whitehead and Zielinsky note that in support of his claim based upon an "unsafe work environment," the Plaintiff's only allegation is that he was injured on a piece of machinery because he did not have sufficient training and/or because the machinery was "old and outdated, the safety features are broke and/or bypassed." ECF No. 66 a 1. The Defendants than argue that despite his *pro* se status, the Court is not required to rewrite the complaint or invent allegations and/or claims that are not pleaded. They then note that the Plaintiff does not allege that anyone acted intentionally or even recklessly, and he does not allege that anyone knew about the alleged problem with the machinery or took any affirmative action to cause his injury. Accordingly, Defendants Whitehead and Zielinsky reiterate their position that the allegations surrounding this claim support a negligence claim at best. In addition, Defendants Whitehead and Zielinsky reiterate their argument in support of qualified immunity.

With respect to his claim of discrimination due to hostile work environment, Defendants Whitehead and Zielinski argue that the Plaintiff fails to cite any law or precedent indicating that homosexuals are, in fact, a protected class. Furthermore, they note that his complaint does not allege that any similarly situated heterosexual inmates received the raise that he felt he should have been given. Accordingly, they argue that without being in a legally protected class and without alleging that he was treated differently than a similarly situated person, he simply has not asserted a viable discrimination claim.

With respect to his retaliation claim, Defendants Whitehead and Zielinsky reiterate that as an inmate, the Plaintiff has no constitutional or any other right to be employed. They also note that the Plaintiff completely failed to address this issue.[4]

**E. Motion to Dismiss by Cecilia Janiszewski, R.N. and Jerry Hahn, M.D.**

These Defendants argue that the Plaintiff's claim with respect to his medical care does not meet the legal threshold for a viable Eighth Amendment claim. More specifically, these Defendants contend that the Plaintiff's allegations amount to no more than a disagreement with the professional judgment and course of treatment selected by the healthcare professionals.   Finally, these Defendants allege that they are entitled to good faith qualified immunity.

**F. Plaintiff Response in Opposition**

In response, the Plaintiff argues that although he alleged a failure to provide proper medical care, his intent was to assert a claim for deliberate indifference to a serious medical condition/need. ECF No. 62-1 at 2. The Plaintiff further asserts that these Defendants have pointed out all of the necessary requirements for establishing a deliberate indifference, and he has alleged all of those requirements in his complaint by virtue of their actions or inactions after he was seriously injured and disabled by machinery at NCF Correctional Industries. Addressing these Defendants' claim for qualified immunity, the Plaintiff maintains that the fact that they failed to treat his serious medical condition/need at the time of the injury or even refer him to a specialist who could possibly treat his injuries, clearly establishes that they are either plainly incompetent or they knowing violated the law in regard to his serious medical

---

[4] On behalf of Eddie Long and Greg Gilli, the Defendants also argue again that any claim based upon respondeat superior must be dismissed as matter of law. However, those two Defendants have since been dismissed pursuant to a Stipulation of Dismissal.

condition/needs. In addition, given that the Plaintiff argues that the Notice of Claim and Screening Certificate of Merit Requirements of the MPLA as set forth in W.Va. Code § 55-7B-1 has no bearing on the instant action, it would appear that the Plaintiff is withdrawing any assertion of medical negligence.

**G. Motion to Dismiss by Jaime Lee**

This Defendant raises the affirmative defense of failure to exhaust and points to the fact that the administrative grievance filed on May 5, 2015, described events which occurred in March of 2013, and she was not employed as the medical director for Wexford until July 20, 2015. ECF No. 50 at 5-6. In addition, this Defendant alleges that there is no specific allegation that she consulted with the Plaintiff nor that she provided any specific medical care or treatment to the Plaintiff that was inadequate. Finally, this Defendant alleges that the amended complaint does not contain sufficient facts to support a claim for relief under the Eighth Amendment for ineffective medical assistance due to deliberate indifference.

**H. Plaintiff's Response**

The Plaintiff's response to Jaime Lee's Motion to Dismiss is identical to the one he filed in response to the Motion to Dismiss by Cecilia Janiszewski and Jerry Hahn.

**I. Reply by Defendant Jaime Lee**

Defendant Lee calls to the Court's attention the fact that the Plaintiff failed to address or dispute her arguments with respect to his failure to exhaust administrative remedies. Accordingly, she notes that her arguments stand uncontroverted on this issue, and because failure to exhaust is fatal to his claim, the complaint against her should be dismissed. In addition, as noted above by the undersigned, because the

Plaintiff appears to have abandoned his malpractice claims, Defendant Lee argues said claims should be dismissed with prejudice. Defendant Lee than reiterates her argument that any claim of deliberate indifference on her part should be dismissed.

### III.   Standard of Review

**Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a case when a complaint fails to state a claim upon which relief can be granted. Dismissal under Rule 12(b)(6) is inappropriate unless it appears beyond doubt that the plaintiff cannot prove any set of facts to support his or her allegations. Revene v. Charles County Comm'rs., 882 F.2d 870 (4th Cir. 1989). Courts, however, are not required to accept conclusory allegations couched as facts and nothing more when ruling on a motion to dismiss pursuant to 12(b)(6). A complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

To survive a motion to dismiss a plaintiff must state a plausible claim in his complaint that is based on cognizant legal authority and includes more than conclusory or speculative factual allegations. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" because courts are not bound to accept as true a legal conclusion couched as a factual allegation. Id.; see also Nemet Chevrolet, Ltd. v. Comsumeraffairs.com, Inc., 591 F.3d 250 (4th Cir. 2009). "[D]etermining whether a

complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." Id.

Whether a complaint is legally sufficient is measured by whether it meets the standards for a pleading stated in the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 8 (providing general rules of pleading), Fed. R. Civ. P. 9 (providing rules for pleading special matters), Fed. R. Civ. P. 10 (specifying pleading form), Fed. R. Civ. P. 11 (requiring the signing of a pleading and stating its significance), and Fed. R. Civ. P. 12(b)(6) (requiring that a complaint state a claim upon which relief can be granted). See Francis v. Giacomelli, 588 F.3d 186 (4th Cir. 2009).

Plaintiff is proceeding *pro se* and therefore the Court is required to liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520-1 (1972) (per curiam); Erikson v. Pardus, 551 U.S. 89, 94 (2007); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978); Gordon v. Leeke, 574 F.2d 1147 (4th Cir. 1978). While *pro se* pleadings are held to a less stringent standard than those drafted by attorneys, Haines, 404 U.S. at 520, even under this less stringent standard, a *pro se* complaint is still subject to dismissal. Id. at 520-21. The mandated liberal construction means only that if the Court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. Barnett v. Hargett, 174 F.3d 1128 (10th Cir. 1999). However, a court may not construct the plaintiff's legal arguments for her. Small v. Endicott, 998 F.2d 411 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." Beaudett v. City of Hampton, 775 F.2d 1274 (4th Cir. 1985). Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is

converted into one for summary judgment. <u>Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co</u>., 267 F.3d 30 (1st Cir. 2001)(cited with approval in <u>Witthohn v. Federal Ins. Co</u>., 164 Fed. Appx. 395 (4th Cir. 2006) (unpublished)). There are, however, exceptions to the rule that a court may not consider any documents outside of the complaint. Specifically, a court may consider official public records, "documents incorporated into the complaint by reference, and matters of which the court may take judicial notice," or sources "whose accuracy cannot reasonably be questioned." <u>Katyle v. Penn Nat'l Gaming, Inc</u>., 637 F.3d 462 (4th Cir. 2011).

## IV.   <u>Analysis</u>

### A.  <u>Unsafe Work Environment</u>

In order to state a cause of action under § 1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that such deprivation is the result of conduct committed by a person acting under color of state law. <u>West v. Adkins</u>, 487 U.S. 42, 48 (1988). Prison officials may violate the Eighth Amendment to the United States Constitution if they are deliberately indifferent to an inmate's safety. <u>See</u> <u>Young v. City of Mt. Ranier</u>, 238 F.3d 567, 575 (4th Cir. 2001) (explaining that the deliberate indifference standard for claims alleging inadequate medical care is also applicable when prison officials fail to protect inmates from other sources of harm). However, to prevail on an Eighth Amendment claim, a plaintiff must show that the defendants  knew about and disregarded an excessive risk to his health or safety, and that their actions constitute a deliberate indifference to his safety. <u>Farmer v. Brennen,</u> 511 U.S. 825, 837 (1994). Eighth Amendment liability cannot be based on simple negligence or lack of due care, but rather requires some sort of

conscious disregard of a serious and imminent risk of harm Id. at 835-39.  In short, the United States Supreme Court has made clear that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment. Wilson v. Seiter, 501 U.S. 294, 297 (1994). Mere negligence is insufficient. See Daniels v. Williams, 474 U.S. 327, 328 (1986); Young, 238 F.3d at 575.

As previously indicated, the Plaintiff's first claim for relief alleges that was injured operating a gold foil stamping machine which he had never operated before. He further alleges that he never had a safety orientation class on this or any other machine. Finally, he alleges that the press was old and outdated, and the safety features were broken and/or bypassed.

However, courts have recognized that the mere failure to provide proper instructions or safety devices for use on prison details does not constitute deliberate indifference. See Franklin v. Kansas Dept. of Corrections, 160 Fed. Appx. 730, 736 (10th Cir. 2005) cert. denied, 549 U.S. 1219 (2009) (concluding that failure to inform and train inmates on proper lifting techniques did not rise above the level of negligence); Stephens v. Johnson, 83 F.3d 198, 200-01 (8th Cir. 1998) (holding that lack of safety training and equipment, including no steel-toed boots and no safety straps on moving dollies in warehouse, as well as patterns of injuries, shows at most, negligence for not taking better safety precautions); Warren v. State of Mo., 995 F.2d 130 (8th Cir. 1993) (finding mere negligence and no deliberate indifference where officials failed to provide "anti-kickback" protective equipment on saw, even where officials knew of similar past injuries that could have been prevented with protective equipment); Brent v. McQuiggin, 2010 WL 3720010 *4 (W.D. Mich. Sept. 17, 2010) (failure to give training and protective

14

gloves for using slicing machine); <u>Brown v. Richmond Correctional Inst.</u>, 2006 WL

14431488 *2 (S.D.Ga. 2006) (failure to provide helmet for limb cutting duty); <u>Arnold v.</u>

<u>South Carolina Dept. of Corrections</u>, 843 F.Supp. 110, 113 (D.S.C. 1994 (failure to

repair faulty steam pot, despite knowledge of faults); and <u>Lee v. Sikes</u>, 870 F.Supp.

1096, 1099 (S.D.Ga.) (failure to train regarding dangers from hogs on prison farm

operation).

In light of these holdings, the Plaintiff has not pleaded, let alone shown, that the

defendants  knew about and disregarded an excessive risk to his health or safety, and

that their actions constitute a deliberate indifference to his safety. Rather, the Plaintiff

has asserted a negligence claim that fails to state a cause of action under the Eighth

Amendment that should be dismissed.

## B.  <u>Discrimination Based on Sexual Orientation</u>

The Plaintiff's second claim for relief alleges that he was exposed to a hostile

work environment in violation of his right to equal protection. More specifically, he

alleges that he was not given a pay raise as promised. In his third claim, he alleges that

he was the victim of retaliation in violation of his right to equal protection. More

specifically, he alleges that he was set up and forced to resign from his prison job after

bagging up materials to throw out from his work space.

The undersigned begins by acknowledging that the law is well established that a

prisoner does not have a constitutionally protected right to work while incarcerated, or to

remain in a particular job once assigned. <u>Boyles v. West Virginia Department of</u>

<u>Corrections</u>, 2013 WL 5728143 (N.D.W.Va.) at *2. "Prisoner work assignments are

matters within the discretion of prison officials, and denial of employment does not, in

and of itself, abridge any constitutional right of the inmate. Id. *citing* Johnson v. Krable, 862 F.2d 314, 1988 WL 119136 at *1 (4th Cir. 1988) (table).

The same is true about a prisoner's pay grade or any benefit that stems from the prison job, such as an apprenticeship program. See Goodman v. McBride, 2007 WL 1821090 *2 (S.D. W.Va. June 22, 2007) ("If an inmate has no constitutionally protected interest in maintaining a particular job assignment, then, *a fortiori*, he has no constitutionally protected interest in any benefit that may stem from maintaining a particular job assignment."

However, the undersigned also recognizes that if a prison program is offered, no prisoner may be treated differently in terms of access to that program on the basis of his or her race or national origin, because "the Constitution prohibits prison supervisors from using race as a factor in determining which prisoners can participate in which programs." Brown v. Summer, 701 F. Supp. 762, 764 (D. Nev. 1988). Likewise, if an inmate is denied a prison work assignment simply because of his sexual orientation, his equal protection rights may have been violated. Brown v. Summer, 701 F.Supp. 762, 764 (D. Nev. 1988); see also Johnson  862 F.2d 314.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.  To that end, the Equal Protection Clause provides that "all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). Generally, in order to establish an Equal Protection Claim, a plaintiff "must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of

intentional or purposeful discrimination. If he makes this showing, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." Veney v. Wyche, 293 F.3d 726, 730-31 (4th Cir. 2002) (internal quotation omitted); Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). In a prison context, this level of scrutiny is "whether the disparate treatment is reasonably related to [any] legitimate penological interests." Veney, 293 F.3d at 732 (internal quotations omitted).

In the instant case, the Plaintiff alleges that he was given a pay raise from Level 3 to only Level 4. He further alleges that the failure to get a Level 5 raise was the result of his asking Defendant Zielinsky to cut back on the jokes and comments because he was gay. Moreover, he indicates that other workers had received raises. He further alleges that he was "set up" for firing in retaliation for his complaints regarding, among other things, gay jokes and comments made by Defendant Zielinsky. Finally, the Plaintiff maintains that other inmates who have done worse things than throw out items without permission were given only verbal warnings or probation.

Accordingly, the undersigned finds that the Plaintiff has made factual allegations that give rise to a plausible claim for a denial of equal protection. Although Defendants Whitehead and Zielinski may be able to defeat these claims with evidence demonstrating that the Plaintiff was not entitled to a Level 5 pay raise, or that there were legitimate reasons for requiring him to resign or be fired, they have chosen not to do so. Therefore, at this early stage of the proceedings, dismissal of these two claims is not warranted.

## C. **Deliberate Indifference**

For his final claim, the Plaintiff alleges that Defendants Cecilia Janiszewski, Jerry Hahn, and Jaimie Lee were deliberately indifferent to his medical needs. Cecilia Janiszewski is named in her position as the Administrator of PrimeCare Medical. Jerry Hahn is named in in his capacity as a physician employed by PrimeCare Medical. Finally, Jaimie Lee is named in her position as the Administrator for Wexford Medical.

To state a claim under the Eighth Amendment for ineffective medical assistance, the plaintiff must show that the defendant acted with deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To succeed on an Eighth Amendment cruel and unusual punishment claim, a prisoner must prove: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991).

A serious medical condition is one that has been diagnosed by a physician as mandating treatment or that is so obvious that even a lay person would recognize the need for a doctor's attention. Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990), cert.denied, 500 U.S. 956 (1991). A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss. Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).[5]

---

[5] The following are examples of what does or does not constitute a serious injury. A rotator cuff injury is not a serious medical condition. Webb v. Prison Health Services, 1997 WL 298403 (D. Kansas 1997). A foot condition involving a fracture fragment, bone cyst and degenerative arthritis is not sufficiently serious. Veloz v. New York, 35 F.Supp.2d 305, 312 (S.D.N.Y. 1999). Conversely, a broken jaw is a serious medical condition. Brice v. Virginia Beach Correctional Center, 58 F. 3d 101 (4th Cir. 1995); a detached retina is a serious medical condition. Browning v. Snead, 886 F. Supp. 547 (S.D. W. Va. 1995). Arthritis is a serious medical condition because the condition causes chronic pain and affects the prisoner's daily activities. Finley v. Trent, 955

The subjective component of a cruel and unusual punishment claim is satisfied by showing that the prison official acted with deliberate indifference.  Wilson, 501 U.S. at 303.  A finding of deliberate indifference requires more than a showing of negligence. Farmer v. Brennan, 511 U.S. 825, 835 (1994). A prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial or nonexistent." Id. at 844.

---

F. Supp. 642 (N.D. W.Va. 1997). A pituitary tumor is a serious medical condition. Johnson v. Quinones, 145 F.3d 164 (4th Cir. 1998). A plate attached to the ankle, causing excruciating pain and difficulty walking and requiring surgery to correct it is a serious medical condition. Clinkscales v. Pamlico Correctional Facility Med. Dep't., 2000 U.S. App. LEXIS 29565 (4th Cir. 2000). A tooth cavity can be a serious medical condition, not because cavities are always painful or otherwise dangerous, but because a cavity that is not treated will probably become so. Harrison v. Barkley, 219 F.3d 132, 137 (2d Cir. 2000). A prisoner's unresolved dental condition, which caused him great pain, difficulty in eating, and deterioration of the health of his other teeth, was held to be sufficiently serious to meet the Estelle standard. Chance v. Armstrong, 143 F.3d 698, 702 - 703 (2d Cir. 1998). A degenerative hip a serious condition. Hathaway v. Coughlin, 37 F.3d 63, 67 (2d Cir. 1994). Under the proper circumstances, a ventral hernia might be recognized as serious. Webb v. Hamidullah, 281 Fed. Appx. 159 (4th Cir. 2008). A twenty-two hour delay in providing treatment for inmate's broken arm was a serious medical need. Loe v. Armistead, 582 F.2d 1291, 1296 (4th Cir. 1978). A ten-month delay in providing prescribed medical shoes to treat severe and degenerative foot pain causing difficulty walking is a serious medical need. Giambalvo v. Sommer, 2012 WL 4471532 at *5 (S.D.N.Y. Sep. 19, 2012). Numerous courts have found objectively serious injury in cases involving injury to the hand, including broken bones. See, e.g., Lepper v. Nguyen, 368 F. App'x. 35, 39 (11th Cir. 2010); Andrews v. Hanks, 50 Fed. Appx. 766, 769 (7th Cir. 2002); Bryan v. Endell, 141 F.3d 1290, 1291 (8th Cir. 1998); Beaman v. Unger, 838 F.Supp.2d 108, 110 (W.D. N.Y. 2011); Thompson v. Shutt, 2010 WL 4366107 at *4 (E.D. Cal. Oct. 27, 2010); Mantigal v. Cate, 2010 WL 3365735 at *6 (C.D. Cal. May 24, 2010) report and recommendation adopted, 2010 WL 3365383 (C.D. Cal. Aug. 24, 2010); Johnson v. Adams, 2010 WL 1407787 at *4 (E.D. Ark. Mar. 8, 2010) report and recommendation adopted, 2010 WL 1407790 (E.D. Ark. Mar. 31, 2010); Bragg v. Tyler, 2007 WL 2915098 at *5 (D.N.J. Oct. 4, 2007); Vining v. Department of Correction, 2013 U.S. Dist. LEXIS 136195 at *13 (S.D.N.Y. 2013)(chronic pain arising from serious hand injuries satisfies the objective prong of Eighth Amendment deliberate indifference analysis). A three-day delay in providing medical treatment for an inmate's broken hand was a serious medical need. Cokely v. Townley, 1991 U.S. App. LEXIS 1931 (4th Cir. 1991).

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment, [or lack thereof], must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). A mere disagreement between the inmate and the prison's medical staff as to the inmate's diagnosis or course of treatment does not support a claim of cruel and unusual punishment unless exceptional circumstances exist. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). A constitutional violation is established when "government officials show deliberate indifference to those medical needs which have been diagnosed as mandating treatment, conditions which obviously require medical attention, conditions which significantly affect an individual's daily life activities, or conditions which cause pain, discomfort or a threat to good health." See Morales Feliciano v. Calderon Serra, 300 F.Supp.2d 321, 341 (D.P.R. 2004) (citing Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2003)).

As previously noted, the Plaintiff's allegations regarding medical care stem from the injury to his hand when was operating the gold foil stamping press. The Plaintiff asserts that "Prime Care Medical has done nothing for me." ECF No. 16 at 10. However, his complaint clearly alleges that after his injury, he was taken to medical where PrimeCare staff looked at his hand and x-rays were taken. He claims to have been told that he had a bone chipped in his right middle finger, and his hand "looked awful." ECF No. 16 at 9. He admits that three fingers have healed, but that his right middle finger has no feeling in the end of it, and the sides hurt constantly like a throbbing toothache. ECF No. 16 at 9-10. In addition, he alleges that PrimeCare took all

medical records with them, they never let him see a specialist, and his finger has healed wrong with severe nerve damage.

The undersigned notes that except for naming Cecilia Janiszewski and Jerry Hahn as defendants under the Parties, the only other specific reference he makes to either is that: "Dr. Jerry Hahn never treated my hand. He nor Administrator Cecilia Janiszewski (or their subordinates) let me see a specialist to treat my hands." ECF No. 16 at 17. Therefore, as noted by Hahn and Janiszewski in their motion to Dismiss, his allegations against them amount to no more than a disagreement with the professional judgment and course of treatment selected by these healthcare providers and do not rise to the level of a plausible constitutional claim.   Accordingly, they should be dismissed as Defendants.

The Plaintiff also names Jaimie Lee as a defendant with respect to his claim of deliberate indifference to his medical needs.[6] Ms. Lee has raised the affirmative defense of failure to exhaust administrative grievances in addition to alleging that the Plaintiff has failed to state a claim for relief against her.

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies.  42 U.S.C. § 1997(e)(a).  Exhaustion as provided in § 1997(e)(a) is mandatory and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,"[7] and is required

---

[6] Jaime Lee was not named in the Plaintiff's original complaint. She was the only defendant added in the amended complaint and the only other "addition" to the original complaint is page 14-e [ECF No. 16 at 17] which purports to set out the facts supporting the Plaintiff's claim for failure to provide proper medical care, which the undersigned has construed as deliberate indifference.

[7] Porter v. Nussle, 534 U.S. 516 (2002)

even when the relief sought is not available.  Booth v. Churner, 532 U.S. 731, 741

(2001).  Because exhaustion is a prerequisite to suit, all available administrative

remedies must be exhausted *prior to* filing a complaint in federal court.  See  Porter v.

Nussle, 534 U.S. 516, 524 (2002) (citing Booth at 741) (emphasis added).

Moreover, in Woodford v. Ngo, 548 U.S. 81,84 (2006), the United States

Supreme Court found that the PLRA's exhaustion requirement serves three main

purposes: (1) to "eliminate unwarranted federal court interference with the

administration of prisons"; (2) to "afford corrections officials time and opportunity to

address complaints internally before allowing the initiation of a federal case"; and (3) to

"reduce the quantity and improve the quality of prisoner suits."  Therefore, "the PLRA

exhaustion requirement requires *full* and *proper* exhaustion."  Woodford, 548 U.S. at 89

(emphasis added).  Full and proper exhaustion includes meeting all the time and

procedural requirements of the prison grievance system.  Id.

The WVDOC has established a three level grievance process for prisoners to

grieve their complaints in an attempt to resolve the prisoners' issues.  The first level

involves filing a G-1 Grievance Form with the Unit Supervisor.  If the inmate receives no

response or is unsatisfied with the response received at Level One, the inmate may

proceed to Level Two by filing a G-2 Grievance Form with the warden/administrator.

Finally, the inmate may appeal the Level 2 decision to the Commissioner of the Division

of Corrections.

The Plaintiff attached two grievances to his complaint. Grievance 15-CCC-2-300,

dated May 5, 2015, appears to relate to improper training on the machine he was using

when he was injured and his injuries. ECF No. 16-1 at 2.  However, to the extent that

this grievance could be construed as exhausting any claims against medical providers[8], it was filed two months before Ms. Lee began her employment as the Administrator of Wexford at NCF, and therefore cannot be construed as exhausting his claims against this Defendant. The Plaintiff did not respond to this allegation by Ms. Lee and has offered no argument that would indicate that he was prevented from exhausting a grievance against her. Therefore, the Plaintiff's claim against Ms. Lee is subject to dismissal for failure to exhaust administrative grievances.

Furthermore, the Plaintiff's only statement with respect to Ms. Lee is that she "runs medical for Wexford and that is who would have got my letters, and never let me see anyone for pain or treatment." ECF No. 16 at 17. There is no allegation that Ms. Lee personally treated the Plaintiff, ever examined his hand or ever prescribed any medications. Moreover, Ms. Lee did not become employed as the Administrator of Wexford until July 20, 2015, more than two years after the Plaintiff's hand injury in March of 2013. In fact, Wexford did not begin providing medical care at the NCF until March 1, 2015. The Plaintiff's complaint contains no allegations that would suggest that his medical condition became worse after that date. Accordingly, even if the Plaintiff had exhausted his administrative grievances against Ms. Lee, his complaint as to her is subject to dismissal for failure to state a claim for relief.

## V.   Recommendation

For the foregoing reasons, the undersigned recommends that the Motion to Dismiss filed by Robert Whitehead and Don Zielinsky [ECF No. 41] be **GRANTED, in**

---

[8] The undersigned notes that this grievance was rejected at each level because it was filed more than 15 days after the he was injured, and therefore, failed to meet all the time and procedural requirements of the DOC grievance procedure.

**part and DENIED in part.** More specifically, the undersigned recommends that the Plaintiff's claim one regarding an unsafe work environment be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief may be granted. In addition, to the extent that the Plaintiff was attempting to include these Defendants in his claim four, regarding medical care, the same should be dismissed against them. However, the Plaintiff's claims two and three alleging violations of equal protection should not be dismissed, and a scheduling order should be entered. In addition, the undersigned recommends that the Motions to Dismiss filed by Jerry Hahn and Cecilia Janiszewski [ECF No. 44] and Jaime Lee [ECF No. 49] should be **GRANTED**, and the claims against these three Defendants should be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief may be granted.

Within **fourteen (14) days** after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections.   A copy of any objections shall also be submitted to the United States District Judge.  **Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation**.   28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985);   United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

Upon entry of this Report and Recommendation, the clerk of court is **DIRECTED** to terminate the Magistrate Judge association with this case until further Order of the District Judge. The Clerk is further **DIRECTED** to send a copy of this Report and

Recommendation to the *pro se* Plaintiff by certified mail, return receipt requested, to the plaintiff's last known address as shown on the docket, and to counsel of record via electronic means.

     DATED:  January 25, 2018

                                    */s Robert W. Trumble*

ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE