IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JASON A. PERRY,

    Plaintiff,

v.                                          Civil Action No. 5:15CV139
                                                                   (STAMP)

W. VA. CORRECTIONAL INDUSTRIES,
EDDIE LONG, ROBERT WHITEHEAD,
DON ZIELINSKY, GREG GILLI,
CECILIA JANISZEWSKI, DR. JERRY HAHN,
JANE/JOHN DOE and JAMIE LEE,

    Defendants.

**MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT,
DENYING MOTIONS IN LIMINE AND
MOTION TO AMEND/CORRECT CASE CAPTION AS MOOT**

## I.  Procedural History

The pro se[1] plaintiff, Jason A. Perry ("Perry"), a state inmate, filed this civil rights matter pursuant to 42 U.S.C. § 1983 against the defendants raising four claims: (1) unsafe work environment; (2) hostile work environment based on sexual preference; (3) discrimination based upon retaliation; and (4) failure to provide proper medical care. This case was referred to United States Magistrate Judge Robert W. Trumble under Local Rule of Prisoner Litigation Procedure 2. The defendants filed several motions to dismiss and the magistrate judge issued a report and recommendation. ECF No. 84. The magistrate judge recommended that

---

[1]"Pro se" describes a person who represents himself in a court proceeding without the assistance of a lawyer. Black's Law Dictionary 1416 (10th ed. 2014).

the motions to dismiss filed by the defendants be granted and that the motion to dismiss filed by defendants Robert Whitehead ("Whitehead") and Don Zielinsky ("Zielinsky") (ECF No. 41) be granted in part and denied in part.

More specifically, the magistrate judge recommended that the plaintiff's claims regarding an unsafe work environment and failure to provide proper medical care be dismissed with prejudice for failure to state a claim upon which relief may be granted. The magistrate judge also found that plaintiff's Claims 2 and 3 alleging violations of equal protection should not be dismissed, and a scheduling order should be entered.

This Court entered a memorandum opinion and order affirming and adopting the magistrate judge's report and recommendation and overruling the plaintiff's objections. ECF No. 91. This Court then entered a scheduling order as to plaintiff's Claims 2 and 3 alleging violations of equal protection by defendants Robert Whitehead ("Whitehead") and Don Zielinsky ("Zielinsky"). ECF No. 92.

Defendants Whitehead and Zielinsky filed an answer (ECF No. 96) to the plaintiff's amended complaint (ECF No. 16). Plaintiff filed a letter motion requesting discovery production (ECF No. 110) which this Court construed as a motion to compel and referred to the magistrate judge (ECF No. 122). Defendants then filed a motion for summary judgment (ECF No. 119) and memorandum in support (ECF

No. 120). Plaintiff filed a response in opposition (ECF No. 121). The magistrate judge then entered an order requiring defendants to produce all discovery requests and responses (ECF No. 123) and consequently granted the plaintiff's motion to compel in part and denied the motion in part (ECF No. 134). Defendants filed their reply to the plaintiff's response in opposition to summary judgment (ECF No. 128) and the plaintiff filed a sur-reply (ECF No. 133). Defendants then filed a reply to the plaintiff's sur-reply (ECF No. 143). This Court then entered an order directing the parties to end briefing on the motion for summary judgment and extended the non-expired scheduling order deadlines and trial 90 days. Plaintiff then filed another response to defendants' sur-reply (ECF No. 145).

The contentions of the parties are now fully briefed and defendants' pending motion for summary judgment (ECF No. 119) is ripe for disposition.

## II. Applicable Law

Under Rule 56(c) of the Federal Rules of Civil Procedure,

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
    (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials; or
    (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

3

Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This burden can be met by showing that the nonmoving party has failed to prove an essential element of the nonmoving party's case for which the nonmoving party will bear the burden of proof at trial. Id. at 322. If the moving party meets this burden, according to the United States Supreme Court, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991), cert. denied, 502 U.S. 1095 (1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). However, as the United States Supreme Court noted in Anderson, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of

4

fact because they may reasonably be resolved in favor of either party." Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979) ("Summary judgment 'should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law.'" (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950))).

In Celotex, the Supreme Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### III. Discussion

The only remaining claims in this civil action are plaintiff's Claim 2 and Claim 3, which are asserted against defendants Robert Whitehead and Don Zielinsky. These remaining claims are discrimination due to hostile work environment based on sexual preference and discrimination based upon retaliation. This Court

construes plaintiff's claims as equal protection violations based on sexual preference.

In the instant case, plaintiff alleges that he was given a pay raise from Level 3 to only Level 4. He further alleges that the failure to get a Level 5 raise was the result of his asking defendant Zielinsky to cut back on the jokes and comments because he was gay. Moreover, he indicates that other workers had received raises. He further alleges that he was "set up" for firing in retaliation for his complaints regarding, among other things, gay jokes and comments made by defendant Zielinsky. Finally, the plaintiff maintains that other inmates who have done worse things than throw out items without permission were given only verbal warnings or probation. Plaintiff alleges that after filing a grievance and explaining his sexual orientation to stop the jokes and comments, things became tense in his work area. Plaintiff contends that retaliatory actions took place following his complaints on the safety issues, the gay jokes and other discrimination issues.

By way of background, plaintiff Perry was initially brought into the program by Correctional Industries on February 25, 2014, on a probationary status, and it was "common knowledge that inmate[] Perry [was] gay[.]" ECF No. 120-3 at 1, Whitehead Aff. ¶ 2, ECF No. 120-4 at 23. Perry's direct supervisor was Don Zielinsky and Robert Whitehead was the superintendent of

Correctional Industries and Zielinsky's direct supervisor. ECF No. 120-3, Whitehead Aff. ¶ 7.

Within one month after his hiring, on March 25, 2014, Perry was promoted to pay grade 1. Id. at ¶ 3. Less than a month after that, Perry was again promoted to pay grade 3. Id. at ¶ 4. Perry was then promoted to pay grade 4 on October 21, 2014. Id. at ¶ 6. During this time, Perry was promoted to new and higher employment positions, and was ultimately promoted to the position of "camera room clerk". Id. at ¶ 5. At all times pertinent to the plaintiff's claims, Correctional Industries had between 40 to 50 inmates in this program. In October 2014, the only Correctional Industries employee to receive such a promotion to Level 4 in Zielinsky's section was Perry. Id. at ¶ 8. From 2011 until Perry resigned, five employees worked in the position of "camera room clerk." Id. Of the four previous "camera room clerks," only one employee was given a promotion to pay grade 5, and that was after ten full months on the job and he took over the position from two employees. Id. As to the other "camera room clerks," Perry was the only one to reach pay grade 4, while the others only made it to pay grade 3. Id.

In a grievance concerning his work place finger injury dated May 5, 2015 – seven months after being promoted to pay grade 4 – Perry specifically stated: "Good people to work for in industries, just poor training and old equipment." ECF No. 16-1 at 2. This

grievance was rejected, however, as it was untimely, and plaintiff voiced no complaints about his numerous promotions at that time.

On July 9, 2015, Perry was found to be printing and distributing a flyer for employees and personal use. ECF No. 120-3, Whitehead Aff. ¶¶ 13, 14. It is against policy for Correctional Industries employees to print materials for personal use and violating this rule can be an immediately terminable offense. Id. Perry was given a verbal warning. Id. at ¶ 16.

Four days later, on July 13, 2015, Perry was caught throwing away items which were property of the state without permission. Id. at ¶ 17. The items that Perry threw away were as follows: Kodak Negative Processor [operator/parts manual], Enco Plate Processor [operator/parts manual], 2 Camera Platemaker Manuals [operator/parts manual], 2 Loupes Magnifiers, 2 Instruction Sheets, Resolution Chart, Empty Binder. Id. These items were worth several hundred dollars and some were still in use at the time plaintiff threw them away. Id. at ¶ 20.

When faced with the option to be terminated and permanently barred from working for Correctional Industries, or to resign and be eligible to return to work after 30 days if an opening existed, Perry resigned. Id. at ¶ 21; ECF No. 120-3 at 13. However, instead of waiting the 30-day period to return to work in the Prison Industries, plaintiff applied for and was hired as a kitchen worker on July 29, 2015. ECF No. 143-3. On August 20, 2015,

plaintiff resigned from his position as a kitchen worker.  Id.  On September 24, 2015, plaintiff then applied for and was hired as a Janitor in D 1 Pod.  Id.

In response to defendants' motion, plaintiff presents several "objections" stating that defendants' arguments are inaccurate and misleading.  Perry asserts, among other things, that Zielinsky stated that "once [Perry] proved [Perry] could do the job, [he] would go to a level 5."  ECF No. 121-1.  Plaintiff adds that defendants fail to explain why the gay jokes continued to be made while he worked there and also fail to explain why he was not asked to resign earlier when he "printed many things" and "[threw] away several things before."  ECF No. 121-1.

Following its review of the fully briefed motion, the parties' supplemental briefing, and the memoranda and affidavits submitted by the plaintiff and the defendants, and for the reasons set forth below, this Court finds that plaintiff has failed to make the requisite showing for an equal protection violation claim in that plaintiff has failed to establish that he was treated differently than similarly situated individuals and has failed to even make a prima facie showing of the basic elements of his asserted claims. Thus, plaintiff's claims fail, and defendants' motion for summary judgment (ECF No. 119) is granted.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its

jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To that end, the Equal Protection Clause provides that "all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). Generally, in order to establish an Equal Protection Claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination.

Prisoners are protected under the Equal Protection Clause from "invidious discrimination." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). To prove a claim under the Fourteenth Amendment that he has been denied equal treatment, an inmate must first show that "he has been treated differently from others with whom he is similarly situated . . . ." Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002); see also Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). "In order to meet this requirement, a plaintiff must set forth 'specific, non-conclusory factual allegations that establish improper motive.'" Boyd v. United States, 2016 WL 8731785, at *9 (N.D. W. Va. May 20, 2016), report and recommendation adopted, 2016 WL 4005861 (N.D. W. Va. July 26, 2016), appeal dismissed, 678 F. App'x 122 (4th Cir. 2017) (quoting Williams v. Hanson, 326 F.3d 569, 584 (4th Cir. 2003)). If he makes this showing, the court

proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny. Id.

In a prison context, this level of scrutiny is "whether the disparate treatment is reasonably related to [any] legitimate penological interests." Veney, 293 F.3d at 732 (internal quotations omitted); Moss v. Clark, 886 F.2d 686, 690 (4th Cir. 1989). To state an Equal Protection claim, a plaintiff must plead sufficient facts to satisfy each requirement. Veney, 293 F.3d 726 at 731.

Plaintiff is proceeding pro se and therefore the Court is required to liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520-1 (1972) (per curiam); Erikson v. Pardus, 551 U.S. 89, 94 (2007); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978); Gordon v. Leeke, 574 F.2d 1147 (4th Cir. 1978). However, this Court need not accept as true unwarranted inferences, unreasonable conclusions, or arguments. E. Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000).

Here, Perry has not demonstrated either that he was treated differently from other similarly situated prisoners, or that his alleged unequal treatment was the result of discriminatory intent.

As an initial matter, defendants briefly argue that Perry's Claim 2 fails for failure to exhaust his administrative remedies in that plaintiff's Claim 2 relates to alleged actions that took place

regarding his promotion and failure to promote to Level 5 in 2014. Defendants argue that Perry did not file his grievance as it relates to these actions until July 14, 2015. ECF No. 16-1 at 3-4. As this is outside the time frame to file a grievance, defendants assert that Claim 2 fails for failure to exhaust his administrative remedies.

Upon review, this Court finds that although Perry did not file his grievance related to being "forced" to resign his position at Prison Industries until July 14, 2015 (ECF No. 16-1 at 3-4), Perry's grievance was not rejected as being outside of the time frame, but rather, was accepted and denied. The Warden's decision to deny Perry's grievance was then accepted and affirmed by the Commissioner. If Perry's grievance was outside of the time frame to file, the Central Office for Grievance Review could have rejected the grievance as untimely. It did not do so. Thus, because Perry's claim was accepted and then denied and affirmed, this Court will construe Perry's grievance as timely and analyze plaintiff's claim on the merits.

The law is well established that a prisoner does not have a constitutionally protected right to work while incarcerated, or to remain in a particular job once assigned. Boyles v. West Virginia Department of Corrections, 2013 WL 5728143 (N.D. W. Va.) at *2. "Prisoner work assignments are matters within the discretion of prison officials, and denial of employment does not, in and of

itself, abridge any constitutional right of the inmate. <u>Id.</u> (citing <u>Johnson v. Krable</u>, 862 F.2d 314, 1988 WL 119136 at *1 (4th Cir. 1988)). The same is true about a prisoner's pay grade or any benefit that stems from the prison job, such as an apprenticeship program. <u>See</u> <u>Goodman v. McBride</u>, 2007 WL 1821090 *2 (S.D. W. Va. June 22, 2007) ("If an inmate has no constitutionally protected interest in maintaining a particular job assignment, then, a fortiori, he has no constitutionally protected interest in any benefit that may stem from maintaining a particular job assignment."). However, if a prison program is offered, no prisoner may be treated differently in terms of access to that program on the basis of his or her race or national origin, because "the Constitution prohibits prison supervisors from using race as a factor in determining which prisoners can participate in which programs." <u>Brown v. Summer</u>, 701 F. Supp. 762, 764 (D. Nev. 1988). Likewise, if an inmate is denied a prison work assignment simply because of his sexual orientation, his Equal Protection rights may have been violated. <u>Brown v. Summer</u>, 701 F. Supp. 762, 764 (D. Nev. 1988); <u>see also</u> <u>Johnson</u>, 862 F.2d 314.

This Court finds no evidence that Perry was intentionally or purposefully discriminated against as an employee of Correctional Industries on the basis of his sexual preference as a homosexual inmate. Rather, there is ample evidence, and the record before the Court conclusively shows, that Perry was asked to resign from his

13

job, and did so voluntarily, after receiving a verbal warning from his supervisor for improperly printing items for personal use and then disposing of state property by throwing items contained within the shop in the trash. Ultimately the decision to ask Perry to resign was not the result of intentional or purposeful discrimination, but rather was based upon a legitimate and non-discriminatory reason. To the extent plaintiff argues that the defendants refused to promote him to a Level 5 pay raise, and that there were no legitimate reasons for requiring him to resign or be fired, this Court finds plaintiff's argument to be unavailing. Plaintiff's requested resignation was a function of the fact that within a four-day period, Perry broke the rules and did so in a manner that was increasing in severity.

This Court has reviewed the affidavits submitted by the plaintiff in this action. First, this Court finds that the affidavits of Brian Sine (ECF No. 152), Brian Dement (ECF No. 153) and Jeff White (ECF No. 158) were submitted past the extended deadlines for briefing and discovery and are ultimately untimely. Second, this Court finds that these affidavits were submitted by the plaintiff after this Court entered an order directing the parties to end briefing in this matter and were not filed as attachments to the parties' earlier extensive briefing. ECF No. 144. Third, this Court finds that all of the affidavits are conclusory and based upon unwarranted inferences. See ECF No. 111

14

(Sutherland Aff.); ECF No. 120-4 (Wilson Aff. and Anderson Aff.); ECF No. 121 (Perry Aff.); ECF No. 152 (Sine Aff.); ECF No. 153 (Dement Aff.); ECF No. 158 (White Aff.). Lastly, to the extent any of the affidavits submitted by plaintiff were properly attached to the briefing and timely filed, this Court finds that they do not create a genuine issue as to any material fact. ECF No. 121 (Perry Aff.)

This Court finds that defendants have submitted ample evidence that shows Perry was, in fact, promoted several times within Correction Industries by his supervisors. Moreover, defendants have submitted ample evidence demonstrating that the plaintiff was not entitled to a Level 5 pay raise, and that there were legitimate reasons for requiring him to resign or be fired. The repeated rehiring of plaintiff also demonstrates the lack of any discrimination based on his sexual preference. This Court finds that plaintiff's homosexuality played no role in his resignation or failure to receive a Level 5 raise.

As to each of the issues raised by Perry, this Court finds that the plaintiff fails to present evidence sufficient to show that he was treated differently from other similarly situated individuals or that he was treated differently than others similarly situated as the result of intentional discrimination and offers only general, conclusory factual allegations with little specificity in support of his claims. Plaintiff fails to meet his

burden in opposing summary judgment and, therefore, summary judgment is warranted.

## IV. Conclusion

For the reasons set forth above, the defendants' motion for summary judgment as to plaintiff's Claims 2 and 3 alleging violations of equal protection (ECF No. 119) is GRANTED. Defendants' motions in limine (ECF Nos. 159, 160, 161, 162, 163, 164, 165, 166, 167, 168, 169, 170, 171, 172, 173, 174, 175, and 176) and defendants' motion to amend/correct case caption (ECF No. 177) are DENIED AS MOOT.

It is further ORDERED that this civil action be DISMISSED and STRICKEN from the active docket of this Court.

Should the plaintiff choose to appeal the judgment of this Court to the United States Court of Appeals for the Fourth Circuit, he is ADVISED that he must file a notice of appeal with the Clerk of this Court within 30 days after the date of the entry of the judgment order. Fed. R. App. P. 4(a)(1)(A).

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to the pro se plaintiff by certified mail and to counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED: December 13, 2018

                                          <u>/s/ Frederick P. Stamp, Jr.</u>
                                          FREDERICK P. STAMP, JR.
                                          UNITED STATES DISTRICT JUDGE